Mac **HERBST** and Sylvia **Herbst,**
Plaintiffs,

v.

Charles R. **ABLE,** Wellwood E. **Beall,**
et al., **Defendants,**
And 13 Other **Related Actions.**

Nos. 66 Civ. 3216, 66 Civ. 3382, 66 Civ. 3471, 66 Civ. 3536, 66 Civ. 3589, 66 Civ. 3658, 66 Civ. 3706, 66 Civ. 3775, 66 Civ. 3859, 66 Civ. 3885, 66 Civ. 3997, 66 Civ. 4194, 66 Civ. 4363, 67 Civ. 348.

United States District Court
S. D. New York.
Aug. 26, 1968.

See also, D.C., 278 F.Supp. 664.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs, Mac Herbst and Sylvia Herbst in 3216, also plaintiff Jack Heidenberg; for plaintiffs, Lawrence J. Beecher et al., in 3471 (except Schulman).

Bergerman & Hourwich, New York City, for plaintiff Harry Levy in 3382, also Jack H. Lieb, Rosamond E. Lieb, Samuel Axelrod and Joseph M. Newmark, also Hoda Corp.

Solomon Kaufman, New York City, for plaintiff Samuel Schulman in 3471.

William Rosenfeld, New York City, for plaintiff Nathan Baker in 3536, and plaintiff Elsie Simon in 3885.

Kanon & Palley, New York City, for plaintiff Max Fuchs in 3589.

Bobroff, Olonoff & Scharf, New York City, for plaintiff Perdita Schaffner, d/b/a PMS Company, in 3658.

Irving Steinman, New York City, for plaintiff Jose Terrile et al. in 3706, and plaintiffs Max Pentel and Frank Denny in 3997.

Abraham M. Glickman, New York City, for plaintiff Henry Selzer in 3859 and 4194.

Lawrence Milberg, New York City, for plaintiff Lillian Gottesman in 3775.

Gerald M. Hertz, New York City, for plaintiff Harry Ginsberg in 3382 and 3216.

Carro, Spanbock & Londin, New York City, for plaintiff Richard Stricof and plaintiff Richard Anthony Goldman in 4363.

Israel Beckhardt, New York City, for plaintiff William Aronson in 348.

White & Case, New York City, for all defendants in all cases, except Merrill

Lynch, Pierce, Genner & Smith, Inc., and Ernst and Ernst.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith in 3382, 3471, 3589, 3658, 3775 and 348.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant Ernst and Ernst in 3382, 3658 and 3775.

## OPINION

MOTLEY, District Judge.

On April 15, 1968, pursuant to the order of Sugarman, C. J., these 14 cases were assigned to this judge for all purposes. General Rule 2, of the Rules of this Court.

On May 10, 1968, the court met with counsel for all parties. On that date, the court set June 21, 1968, as the date for all plaintiffs to file motions on the question whether these cases should be class actions.

Of the 14 cases, 11 are denominated class actions; *Simon* and the two *Selzer* cases are not. Plaintiffs in *Herbst, Beecher, Levy* and *Gottesman* sought to have their cases declared class actions pursuant to Fed.R.Civ.P. 23.

■ Although they were given the opportunity to do so, plaintiffs in *Baker, Schaffner, Terrile, Pentel, Stricof* and *Aronson* did not seek to have their actions determined to be class actions. This court, therefore, determines that these actions are not to be maintained as class actions. Indeed, by failing to so move these plaintiffs leave the court with no choice but to conclude that they will *not* "fairly and adequately protect the interests of the class." Fed.R.Civ. P. 23(a) (4). Since this is a prerequi-

site of a class action, these cases may not be so maintained.

■ Plaintiff Fuchs filed his motion, for an order determining his case to be a class action, on July 19, 1968. Plaintiff's attorney, in a letter accompanying his notice of motion and affidavit, ascribed the delay to "our summer vacation schedule." The accompanying affidavit informs the court that counsel for plaintiff filed the belated motion in order to protect plaintiff from possible prejudice. The attorney believed that the motion made by the *Beecher* and *Herbst* attorneys "would obviate the necessity of a separate formal motion on behalf of Fuchs." He submits no brief as "the memorandum submitted by plaintiffs, Herbst and Beecher, and that of plaintiff, Levy, both in support of their motions, have adequately set forth persuasive arguments and sufficient authority to demonstrate that the Fuchs action is maintainable as a class action. * * *" By these actions, plaintiff's laches and his reliance on the work of the other plaintiffs, Fuchs has demonstrated to the court that he, too, fails to meet the requirements of Fed.R.Civ.P. 23(a) (4) of "fairly and adequately" protecting the interests of the class. Thus, this court determines that the Fuchs action is not maintainable as a class action.[1]

## HERBST

*Herbst* is an action allegedly on behalf of

I. All persons who converted (4%) debentures of Douglas into common stock of said defendant, as hereinafter alleged (i. e., between April 13, 1966 and May 3, 1966) and

1. It should be noted that this action is not detrimental to the members of the class Fuchs seeks to represent. If the Beecher papers present, as Fuchs asserts, "persuasive arguments and sufficient authority" to warrant this court in determining it to be a class action, Fuchs and those he seeks to represent

("persons who purchased debentures of Douglas * * * between July 12, 1966, and September 29, 1966, and who seek to rescind") will be members of the class represented ("all persons who purchased the debentures * * * during the period July 12, 1966 * * * and September 29, 1966 * * *").

II. All persons who purchased securities of said defendant from March 24 to June 26, 1966.

Plaintiffs Herbst purchased 10 debentures on April 12, 1966 for $14,060.56, and converted these, on May 3, 1966, into 133 shares of Douglas stock. Plaintiff Heidenberg purchased, between January 3 and 7, 1966, 200 debentures for $258,111.25. On or about April 19, 1966, he converted these into 2662 shares of stock. On or about November 14, 1966, he sold 500 of such shares for $21,514.05. Plaintiff Ginsberg, on or about November 26, 1965, purchased 20 debentures for $25,755.14. On or before May 3, 1966, he converted these into 266 shares of common stock which he sold on or about June 28, 1966, for $17,709.73.

Plaintiffs allege that defendants knowingly made false and misleading statements grossly exaggerating Douglas' earnings; that they knowingly omitted to state material facts; that they engaged in acts, etc., which operated to deceive, and that they employed a device, scheme or artifice to defraud. Plaintiffs further allege that they "purchased and converted" their debentures in reliance on the truth of defendants' statements, that debenture holders who converted did so in reliance on the statements; and that from March 24 to June 26 numerous persons purchased Douglas stock and debentures in reliance on the truth of defendants' statements.

As can be seen, one plaintiff who converted still holds his stock, one has sold his stock at a loss, and one holds some stock, having sold the rest at a loss.

■ Before determining that this action is maintainable as a class action, the court must be convinced that plaintiff will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a) (4). Those who *still* hold shares in Douglas (now McDonnell Douglas) have shares which are today of greater value than at the time of conversion. They are also owners of part of the equity of the corporation, and presumably have an interest in protecting that investment. The questions therefore are:

1) can debenture holders who converted into stock and still own stock "fairly and adequately" protect the interests of those who converted and sold the stock at a loss?

2) can those who converted and subsequently sold the stock at a loss "fairly and adequately" represent those who converted and still own stock?[2] Compare, Pomierski v. W. R. Grace & Co., 282 F. Supp. 385 (N.D.Ill.Dec. 29, 1967) (warrant holder who did not exercise his rights before cut-off date could not fairly and adequately represent those who did exercise their rights).

■ These questions present, however, just the first stumbling block to the *Herbst* plaintiffs. What may very well prove to be the more significant hurdle is that of notice. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568–570. (2d Cir. 1968). All parties agree that the class (however defined) is so numerous that joinder of all members is impracticable. We must first hold an evidentiary hearing to determine whether "any members of the class (can) be identified through reasonable effort so that such persons may be given individual notice." *Eisen,* supra, at 569. If they cannot be so identified, is there any method of giving notice which is efficacious and reasonably calculated to apprise class members of the pendency of this suit?

There appears, however, to be no reason why the notice problem should be insuperable. Douglas notified those individuals who owned the debentures that they were being called and, presumably, provided brokerage houses and other nominees with sufficient notices so that

2. If the answer to either of these questions is "no", it would also appear that plaintiff's attorney may be presented with a conflict of interests.

they could (and probably did) forward them to the beneficial owners. Records of this procedure may be available. (Similarly, with regard to the 4¾% debentures, if they were to be called today, individual notice could probably be given to their owners. The question there is whether, by a similar procedure, we can identify the original (i. e., July 12—September 29) purchasers.)

■ Finally, there is the question of reliance. Is the question of each individual plaintiff's reliance so crucial an issue, see e. g., Berger v. Purolater Products, Inc., 41 F.R.D. 542, 545 (S.D.N.Y.1966) and so complicated factually that it predominates over the common questions of law and fact involved in this suit? Fed. R.Civ.P. 23(b) (3). That the action is one involving the issue of reliance is not sufficient to lead this court to conclude, on that basis *alone*, that common questions do not predominate. See Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966). In the case before us, the defendants strongly urge that individual questions of reliance are so overwhelming that this court should not declare this case a class action. This argument is based upon defendants assumption that each member of the class would have to testify as to reliance. This assumption is, however, open to question. Individual issues could possibly be decided after common questions are decided, and handled separately. See Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F.R.D. 39, 47

(1967). In the alternative, it is possible that plaintiffs may be able to prove that it is more likely than not that the *class* relied by calling less than all members of the class. At this juncture, therefore, the court cannot tell whether common questions predominate over individual questions regarding reliance. Nor can this court now determine whether there are other individual issues which are likely to present similar problems.

Because of these unanswered questions, this court cannot now conclude that this action is maintainable as a class action. A hearing will be held, on December 2, 1968, at 10:00 A.M., to give the parties an opportunity to present the proofs necessary to enable the court to answer these questions.

■ Plaintiffs claim also to represent all persons who purchased securities of Douglas from March 24 to June 26, 1966. Only members of a class may sue as representative parties on behalf of the class. Fed.R.Civ.P. 23(a). Plaintiffs purchased no securities of Douglas during this period. All plaintiffs did was convert 4% debentures into stock. Thus they may not maintain a class action on behalf of a group of which they are not members and these allegations are ordered stricken from their complaint.[3]

### LEVY

The other three actions, Levy, Beecher, and Gottesman all relate to the 4¾% debentures of Douglas and involve the time period after July 12, 1966.[4]

3. Even if by some stretch of the imagination plaintiffs could make themselves members of this class, they have failed to demonstrate that they have such an identity of interest with other security purchasers that they could "fairly and adequately" represent them. Fed.R.Civ. P. 23(a).

4. Before considering these individually one point should be discussed. Counsel for Herbst and Beecher proposes a class structure as follows:
"All persons who suffered injury in consequence of

*A.* Their conversion, between April 13 and May 3, 1966, of 4% convertible debentures of Douglas into common stock of Douglas;

*B.* Their purchase, between July 12, 1966, and September 30, 1966, of 4¾% convertible debentures of Douglas;

*C.* Their purchase, between January 31, 1966, and June 26, 1966, of common stock of Douglas;

*D.* Their purchase, between July 12, 1966, and September 30, 1966, of common stock of Douglas."

*Levy* is a suit allegedly on behalf of all persons who

"purchased, on or after July 12, 1966 (4¾%) debentures * * * and

*a.* have since sold said debentures at a loss; or

*b.* continue to be owners thereof."

Plaintiff Levy purchased 40 debentures on July 12, 1966. He sold 20 on September 14, 1966, at a loss of $2,050. He continues to hold 20.

Plaintiff Ginsberg bought 10 debentures on July 13, 1966, and sold them on November 2, 1966, at a $2,521.25 loss. Plaintiff Hoda Corp. purchased 50 debentures on July 13, 1966, and sold them on September 30, 1966, at a $10,250 loss. Plaintiffs Jack and Rosamond Lieb purchased 11 debentures on July 12, 1966, and continue to hold the same. Plaintiff Axelrod purchased 10 debentures on July 12, 1966. On September 6, 1966 he sold 5 at a $700 loss and on September 7, 1966, he sold the other 5 at a loss of $718.25.

Plaintiff Newmark purchased 10 debentures on August 31, 1966, for $8,450; he sold them September 6, 1966, for $8,550. He purchased 20 debentures on September 12, 1966, for $17,850 and sold 10 on September 21, 1966 for $8,775 and 10 on September 26, 1966, for $8,750. He purchased 10 more debentures on September 30, 1966, for $7,825 and sold them on October 3, 1966 for $7,650.

Plaintiffs all allege violation of Sections 5(b), 10, 11, 12 and 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule X–10–B–5 of the Securities Exchange Commission.

*Levy* plaintiffs seek to have this action determined a class action under Fed.R. Civ.P. 23(b) (1) (B) or 23(b) (3). Clearly this is not the type of action envisioned as a 23(b) (1) (B) action.[5] See, Jacobs v. Paul Hardeman, Inc., 42 F.R.D. 595, 597 (S.D.N.Y. 1967); Advisory Committee's Note to New Rule 23, 39 F.R.D. 98, 100–102 (1966).

As a class action under Rule 23(b) (3), this case presents the same notice problems referred to above, and, accordingly, an evidentiary hearing will be held,

---

This class structure is blatantly impossible. Although some complaints encompass "A" and "C", and others "B" and "D", none of the complaints overlap. The kinds of representations alleged to be the basis of the claims differ both as to kind and as to time. *Additionally,* there is no overlap as to the alleged representations which form the basis of the actions. Even if this court were to consolidate the cases (a motion to achieve this result was made, prematurely, in this court's opinion) this would not have the effect of making the parties to one suit parties to the other. See, National Nut Co. of Cal. v. Susu Nut Co., 61 F. Supp. 86 (N.D.Ill.1945). Each suit would still have to be considered individually for the purpose of determining whether it is a class action. See, Mac-Alister v. Guterma, 263 F.2d 65 (2d Cir. 1958). Thus, although we may, in this case, eventually end up with 2 class actions, one structured with "A" (4% debentures) plaintffs the other with "B" (4¾% debentures) plaintiffs, we cannot, in this court's opinion, have one class action structure with the two sub-classes.

Because, as described in the text, no plaintiff is a member of the class of these who purchased Douglas common stock, no class action may be maintained on behalf of "C" and "D" members, and these sub-classes are therefore impossible.

Counsel have constantly endeavored to confuse the different actions involved here, and such confusion serves only to make the analysis of essentially complex issues all the more difficult.

5. Rule 23(b) (1) (B) provides:

"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

1) the prosecution of separate actions by or against inividual members of the class would create a risk of

\* \* \* \* \*

(B). adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; \* \* \*.

immediately following the hearing in *Herbst,* to hopefully shed more light on that problem.

This case also presents the same problem of adequate representation. Can those who purchased the debentures and still hold them (at a profit and with an interest in Douglas), "fairly and adequately" represent those who sold debentures at a loss, and *vice versa?* [6]

*Levy* plaintiffs do not claim to represent those who purchased other Douglas securities and so we are not faced with the questions of whether (a) they are members of the class or (b) whether they could fairly and adequately represent the class. Since they claim that the registration statement was false and misleading, reliance may not create the problems in this case that we indicated above as to the predominance of common questions over those affecting only individual members. It is not clear, at this stage, whether any other questions affecting only individual class members would create any problems. As to plaintiff Newmark, who purchased long after the registration period and after the company announced the loss, reliance may be a problem, (See, e. g. West v. Zurhorst, 280 F.Supp. 574, 580 (S.D.N.Y.1967)), however, and we are still faced with the question whether common questions predominate over individual questions.

### BEECHER

*Beecher* is a suit allegedly on behalf of:

"I. All persons who purchased the (4¾%) debentures * * * during the period July 12, 1966 * * * and September 29, 1966 * * *; and

II. All persons who purchased any other security of (Douglas) from July 12, 1966, to September 29, 1966."

Plaintiff Beecher purchased $5,000 worth of debentures on or about July 12, 1966. The same is true of plaintiff Spaulder. Apparently both of these plaintiffs still hold the debentures.

Plaintiff Stoneman purchased $25,000 worth of debentures on or about July 12, 1966, and sold them on October 26, 1966, for $18,694.76 (including $382.63 accrued interest).

Plaintiff Stoneman and Chandler, a partnership, purchased $23,000 worth of debentures on or about July 12, 1966. They sold them on October 24, 1966, for $17,199.18 (including $352.02 accrued interest).

Plaintiff Schulman purchased $100,000 worth of debentures on July 27, 1966, for $100,237.50. Apparently he still holds them.

Plaintiffs allege that the registration statement contained untrue statements and omitted to state material facts; that defendants employed a device, scheme or artifice to defraud; and engaged in acts, etc., which operated as a fraud or deceit.

It is clear that in this case, too, we must have an evidentiary hearing on the *Eisen* notice problem. Since it presents essentially the same issues as *Levy* these hearings will be consolidated.

As explained, supra, plaintiffs are not members of the class of those who purchased securities of Douglas, other than debentures, and so cannot maintain a class action on their behalf.

As to the class they are members of, i. e. debenture purchasers, this case, too, presents the problem of adequate representation because again some plaintiffs have sold the debentures at a loss while others still hold them (at a profit).

It is not clear whether in this case common questions predominate over those affecting individual members. It is not clear whether plaintiffs' theory of the

---

6. There is also the problem as to whether plaintiff Newmark who purchased debentures the day *after* Douglas announced its loss can "fairly and adequately" represent anyone.

case is that they are proceeding under Section 11 of the Securities Act of 1933 and need not prove reliance, or whether they are proceeding under Section 10(b) of the 1934 Act and the common law, in which case reliance is an essential element. See, Berger v. Purolater Products, Inc., 41 F.R.D. 542, 545 (S.D.N.Y.1966). Counsel for plaintiffs has stated "each (member of the class) would have to testify on the issue of his reliance on defendants' representation." Affidavit of Haudek, January 27, 1967, in Opposition to Motion to Transfer, p. 5. Until these problems are solved, this case, too, may not be declared a class action.

## GOTTESMAN

This is an action on behalf of "all persons who during the period from July 17, 1966, to September 29, 1966, bought (4¾%) debentures * * * and thereafter sold said debentures at a loss or continued to be the owners thereof and sustained losses thereby and all persons who purchased any other security of (Douglas) on and after July 12, 1966."

Plaintiff purchased 5 debentures on July 19, 1966, for $5,011.88 (including $11.88 in accrued interest). She sold 4 debentures on October 27, 1966 for $2,923.80. She still holds one debenture.

Plaintiff makes the same allegations as to false statements and schemes to defraud as are made in *Beecher*.

This case presents all the problems presented in *Beecher* and must be handled the same way.

## SUMMARY

Decision on these motions to have these cases declared class actions is reserved until after the hearing ordered by this court.

The allegations of plaintiffs *Herbst, Beecher* and *Gottesman* that they sue on behalf of those who purchased securities of Douglas other than debentures are stricken from the complaints. Plaintiffs are not members of this class and are not entitled to maintain a class action on their behalf. Fed.R.Civ.P. 23(a).

An evidentiary hearing will be held beginning on December 2, 1968, in Herbst v. Able. The purpose of this hearing will be to determine whether 1) individual notice to members of the class is practicable and, if not, whether any other method of notice is sufficiently efficacious to prevent this court from dismissing the class action allegations of this complaint. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 568–570 (2d Cir. 1968); 2) plaintiff can "fairly and adequately" protect the interests of the class; 3) common questions of law or fact predominate over any questions affecting an individual member. Fed.R.Civ.P. 23 (b) (3).

At the conclusion of the hearing the parties will submit briefs on these questions. In addition, plaintiffs will be expected to specify:

1) How much, financially, they are willing to spend to provide notice to members of the class, if the court determines this action may be so maintained; and

2) How they intend to undertake to answer inquiries from members of the class?

Immediately following that hearing, a hearing will be held in *Beecher, Levy* and *Gottesman.* That hearing will concern itself with the same questions and will proceed in the same manner.

Counsel are admonished to maintain, at least for the time being, the separate identity of the case relating to the 4% debentures, *Herbst,* and the cases relating to the 4¾% debentures, *Levy, Beecher* and *Gottesman.*

Finally, for the reasons explained above, the class action allegations are ordered stricken from all other cases.

So ordered.